RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

―――――――――

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

No. 18-5099

DONALD CORY MYERS,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Eastern District of Tennessee at Winchester.
No. 4:17-cr-00005-1—Travis R. McDonough, District Judge.

Argued: January 31, 2019

Decided and Filed: June 3, 2019

Before: GRIFFIN, WHITE, and BUSH, Circuit Judges.

―――――――――

## COUNSEL

**ARGUED:** Gianna Maio, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Gianna Maio, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Chattanooga, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

---

**OPINION**

---

HELENE N. WHITE, Circuit Judge.

Defendant-Appellant Donald Myers challenges his 180-month sentence imposed under the Armed Career Criminal Act (ACCA) based on two prior Tennessee convictions for initiation of a process intended to result in the manufacture of methamphetamine. Myers argues that the Tennessee initiation offense is not a serious drug offense under the ACCA. We AFFIRM.

## I. Background

### A. Factual Overview

On August 24, 2016, Myers entered Kelly Sullivan's home without permission, pulled out a gun, pointed it at Sullivan, and demanded drugs. Sullivan told Myers that she had drugs in her car and the two went outside. Once outside, Sullivan saw her neighbor Kristy Baker and attempted to whisper to her to call the police. Myers then grabbed Sullivan and told Baker, "if you value this woman's life, you will get me drugs." (R. 28, PID 91.) Baker ran from the scene and called the police, who soon arrived and arrested Myers.

Myers pleaded guilty to being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The Pre-Sentence Investigation Report (PSR) recommended that Myers qualify as an armed career criminal under the ACCA, 18 U.S.C. § 924(e), based on his prior Tennessee convictions for aggravated assault and two separate initiations of a process intended to result in the manufacture of methamphetamine.[1] The PSR recommended the mandatory minimum sentence of fifteen years' imprisonment under the ACCA.

At sentencing, Myers objected to his classification as an armed career criminal, arguing that initiating a process intended to result in the manufacture of methamphetamine is not a

---

[1]On July 28, 2006, the Coffee County Circuit Court sentenced Myers to six years' imprisonment for the aggravated assault. On May 11, 2011, the Coffee County Circuit Court sentenced Myers to eight years and six months' imprisonment for both initiation charges. Myers committed the first of these on November 25, 2010; Myers committed the second offense on January 26, 2011. Both offenses carried a potential maximum sentence of ten years' imprisonment or more.

"serious drug" offense under the ACCA. The district court disagreed, concluding that the convictions qualify as ACCA predicates because initiating a process to manufacture methamphetamine involves manufacturing the drug. After finding that Myers is an armed career criminal, the district court sentenced him to the statutory mandatory minimum term of 180 months imprisonment and 3 years' supervised release, and also imposed a special assessment of $100. This timely appeal followed.

## II. Discussion

### A. Standard of Review and Applicable Law

The court reviews de novo whether a prior conviction is a "serious drug offense" under the ACCA. *United States v. Stafford*, 721 F.3d 380, 395-96 (6th Cir. 2013).

To determine whether a particular offense qualifies as a serious drug offense, the court applies a "categorical approach," which looks "only to the statutory definitions—*i.e.*, the elements—of a defendant's prior offenses, and *not* to the particular facts underlying those convictions." *Descamps v. United States*, 570 U.S. 254, 261 (2013) (internal quotation marks and citation omitted). Further, the inquiry turns on the elements of the offense at issue, and not the label state law places on it. *Taylor v. United States*, 495 U.S. 575, 588-89 (1990) ("Congress intended that the enhancement provision [of the ACCA] be triggered by crimes having certain specified elements, not by crimes that happened to be labeled 'robbery' or 'burglary' by the laws of the State of conviction.").

At issue is whether the district court properly applied the ACCA sentence enhancement, 18 U.S.C. § 924(e), which provides:

> (1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

And § 924(e)(2)(A) defines "serious drug offense" to mean:

> (i) an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

> (ii) an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law.

The state offense at issue, the initiation of methamphetamine manufacture, is defined by Tennessee Code Annotated § 39-17-435:

> (a) It is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine.

> (b) It shall not be a defense to a violation of this section that the chemical reaction is not complete, that no methamphetamine was actually created, or that the process would not actually create methamphetamine if completed.

> (c) For purposes of this section, "initiates" means to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation.

These are the only means by which a defendant can be convicted of initiation of methamphetamine manufacture process under Tennessee law.

## B. Analysis

A state conviction qualifies as "a serious drug offense" if it is an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). There is no dispute that initiation of the methamphetamine manufacture process carries a maximum term of ten years or more, and that methamphetamine is a listed controlled substance. Tenn. Code Ann. § 39-17-435(f); § 40-35-111(b)(2) (prescribing a maximum "authorized term[] of imprisonment" of up to "thirty (30) years" for Class B felonies).

The sole issue on appeal is whether the initiation offense *involves* manufacturing methamphetamine.

### 1. *United States v. Eason*

This court recently held in *United States v. Eason*, 919 F.3d 385 (6th Cir. 2019), that the related Tennessee offense of promoting methamphetamine manufacture, Tenn. Code Ann. § 39-17-433, is a serious drug offense under the ACCA. After conducting the divisibility analysis required by *Descamps* and *Mathis v. United States*, 136 S.Ct. 2243 (2016), the *Eason* court concluded that the least of the acts criminalized by the statute is the purchase of an ingredient that could be used to produce methamphetamine with reckless disregard of its intended use. 919 F.3d at 389. The court then analyzed whether such conduct "involves" the manufacture of methamphetamine so as to qualify as a serious drug offense under the ACCA.

The panel noted that most other circuits have interpreted involving "as an 'expansive term,' which goes beyond the enumerated offenses and 'requires only that the conviction be related to or connected with drug manufacture, distribution, or possession, as opposed to including those acts as an element of the offense.'" *Id.* at 390-91 (quoting *United States v. Bynum*, 669 F.3d 880, 886 (8th Cir. 2012) (internal quotation omitted)); (citing *United States v. Gibbs*, 656 F.3d 180, 185 (3d Cir. 2011) ("In adopting this position, we conform with all courts of appeals that have addressed the scope of the definition of a serious drug offense."); *United States v. Vickers*, 540 F.3d 356, 365 (5th Cir. 2008) ("[I]nvolving means related to or connected with." (citation and internal quotation marks omitted)); *United States v. Alexander*, 331 F.3d 116, 131 (D.C. Cir. 2003) (citing "related to or connected with" language); *United States v. King*, 325 F.3d 110, 113-114 (2d Cir. 2003) ("[I]nvolving has expansive connotations ... encompassing ... offenses that are related to or connected with [distributing, manufacturing, or possessing.]")). But, the *Eason* court also observed that the term "involving" has its limits, and that while the term "is not to be too narrowly read, it also is not to be too broadly read." *Id.* (quoting *United States v. McKenney*, 450 F.3d 39, 45 (1st Cir. 2006) (explaining that "[n]ot all offenses bearing any sort of relationship with drug manufacturing, distribution, or possession with intent to manufacture or distribute will qualify as predicate offenses under ACCA. The relationship must not be too remote or tangential.")).

In addressing the "involving" test, the court explained:

> Here, the conduct prohibited [] relates to and is connected with the manufacture of methamphetamine. Methamphetamine can be made largely from products purchased over the counter. . . . Thus, the purchase of those ingredients is often an essential first step in the drug's manufacture. And to ensure that the statute criminalizes only those purchases that relate to manufacture—for our purposes, that they are not too tangential from manufacture—the Tennessee legislature requires more: a person must purchase the ingredient with knowledge that it will be used to produce methamphetamine, or with a "reckless disregard of [the ingredient's] intended use."

*Id.* at 391-92.

The *Eason* panel determined that both the minimal mens rea required (reckless disregard of the ingredient's intended use) and the action required (purchasing the prerequisite ingredient) are sufficiently connected to the "methamphetamine's 'production, preparation, propagation, compounding or processing'" to make the promotion offense an offense that "involves" the manufacture of methamphetamine under the ACCA. *Id.* at 392 (quoting 21 U.S.C. § 802(15) (defining manufacturing)).

## 2. Whether the Initiation of Methamphetamine Manufacture Process Is a Serious Drug Offense Under the ACCA

Although Myers's prior convictions were of the initiation statute, rather than the promoting statute, *Eason* dictates the outcome here. Myers argues that a person could be convicted under the Tennessee initiation statute without possessing, distributing, or "actually starting the process of manufacturing" any controlled substance under 18 U.S.C. § 924(e)(2)(A)(ii), (Appellant Br. at 13) and that a person can use thousands of legal, commonplace ingredients to make methamphetamine, including automotive and household chemicals, like lighter fluid and lithium strips, many of which are not defined as controlled substances under federal law. (*Id.* at 16-19) (citing *State v. Dunn*, 2016 WL 1446113 (Tenn. Crim. App., April 12, 2016) for the proposition that a defendant has been convicted of initiation for possessing an opened cold compression pack, among other household materials).) Although Myers acknowledges that courts have interpreted the phrase "involving" broadly, he maintains that the term as written "modifies the word '*controlled substance*,'" and since he never possessed

or manufactured a controlled substance, his offense is not subject to the ACCA enhancement. (Appellant Br. at 14-15 (emphasis in original).)  But these objections apply to the promotion offense as well, and were rejected by *Eason*, which held that simply purchasing an ingredient that could be used to produce methamphetamine with reckless disregard for its intended use constitutes an offense involving the manufacture of methamphetamine under the ACCA.

The initiation statute here requires that a person "knowingly initiate a process intended to . . . manufacture . . . methamphetamine," which is accomplished by "begin[ning] the extraction of an immediate methamphetamine precursor from a commercial product," "begin[ning] the active modification of a commercial product for use in methamphetamine creation," or "heat[ing] or combin[ing] any substance or substances that can be used in methamphetamine creation."  Tenn. Code Ann. § 39-17-435.  If purchasing a methamphetamine ingredient with reckless disregard for its intended use involves the manufacture of methamphetamine, then knowingly initiating a process intended to manufacture methamphetamine surely involves its manufacture as well.

Myers is correct that a defendant could be convicted under the initiation statute although "no chemical reaction would likely result, no controlled substances would be involved, and certainly no methamphetamine would be produced." (Appellant Br. at 17).  However, as *Eason* made clear, the Tennessee legislature's intent to criminalize steps in the methamphetamine manufacturing process, including actions short of the actual manufacture of the drug, does not remove the offenses from the ambit of the ACCA, provided they still involve the manufacture of the drug.  Further, Tennessee cases have held that the initiation offense must be committed knowingly.  In *State v. Banks*, No. M2008–01823–CCA–R3–CD, 2010 WL 2943115, at *7 (Tenn. Crim. App. July 26, 2010), the court explained:

> Because the specific steps which comprise the initiation offense must be undertaken 'knowingly,' a person who inadvertently heats or mixes substances which are commonly used in the manufacture of methamphetamine, or purchases an over-the-counter drug containing a prohibited substance would not be guilty of a crime under the terms of the statute unless the state proved that the conduct was undertaken with the intent to initiate a process that would lead to the production of methamphetamine.

By pleading guilty to two initiation offenses, Myers acknowledged that he knowingly initiated a process intended to result in the manufacture of methamphetamine. Because Myers had a violent felony conviction and two serious drug offense convictions, the district court did not err in sentencing him as an armed career criminal under the ACCA.

### III. Conclusion

For the reasons above, we **AFFIRM** the district court's application of the ACCA's sentencing enhancement.