[PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 21-12609

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHRISTOPHER E. MILES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:20-cr-00082-MCR-1

_____

Before LAGOA and BRASHER, Circuit Judges, and BOULEE,* District Judge.

BRASHER, Circuit Judge:

This appeal requires us to decide whether the state crime of possessing a listed chemical with reasonable cause to believe it will be used to manufacture a controlled substance is a "serious drug offense" under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(A)(ii). Several years ago, Christopher Miles was convicted of such an offense under Florida law. In this federal case, he pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ACCA imposes a fifteen-year mandatory minimum sentence on violators of Section 922(g)(1) if they have three previous qualifying felonies. Because Miles has two other qualifying felonies, Miles's eligibility for ACCA's mandatory minimum turns on whether his Florida conviction for unlawful possession of a listed chemical is a "serious drug offense" because it "involv[es] manufacturing . . . a controlled substance." *See id*. § 924(e)(2)(A)(ii). The district court counted the Florida conviction and sentenced Miles to the mandatory minimum sentence.

We disagree. We have held that an offense is a "serious drug offense" under Section 924(e)(2)(A)(ii) if it proscribes one of the kinds of conduct listed in that section, i.e., "manufacturing,

---

* Honorable J. P. Boulee, United States District Judge for the Northern District of Georgia, sitting by designation.

distributing, or possessing with intent to manufacture or distribute." *United States v. Penn*, 63 F.4th 1305, 1316 (11th Cir. 2023). But possessing a listed chemical with reasonable cause to believe it will be used to manufacture is not itself "manufacturing." Likewise, this offense does not "involv[e] manufacturing" as we have previously defined that term. An offense "involv[es] manufacturing" if it "necessarily entail[s]" the conduct of manufacturing, *see, e.g.*, *United States v. Smith*, 983 F.3d 1213, 1223 (11th Cir. 2020) (quoting *Shular v. United States*, 140 S. Ct. 779, 783-84 (2020)), but the elements of the crime of unlawful possession of a listed chemical do not "necessarily entail" the conduct of manufacturing. Possessing one ingredient to make a controlled substance with "reasonable cause to believe" that *some person will use it to* manufacture a controlled substance is too far removed from the conduct of manufacturing itself to satisfy the "necessarily entail[s]" standard.

We hold that a conviction under Florida Statutes § 893.149(1) for possessing a listed chemical with reasonable cause to believe it will be used to manufacture a controlled substance is not a "serious drug offense" under ACCA. Accordingly, we vacate Miles's sentence and remand this case for resentencing.

## I.

### A.

In June 2013, first responders arrived at the scene of a fire started by the manufacture of methamphetamine running rampant through the living room of a residence in Okaloosa County,

Florida. Greeting first responders outside the front door was a one-gallon container of Coleman fuel, which is sometimes used to manufacture methamphetamine. The home's occupants had fled the scene. Knowing the tenant of the home was already jailed on methamphetamine-related charges, investigators immediately suspected drug activity as the fire's cause. Inside the home, investigators found a charred couch in the living room. Burn patterns in the room led investigators to conclude the fire started on the floor next to the couch—not from an accidental source like an electrical outlet or light fixture. Investigators also found burned clothing near the couch that tested positive for the presence of Coleman fuel.

The next day, Bobby Ray Tucker, Jr. told law enforcement officers that he, Christopher Miles, and Phillip James Young went to the home the day before after buying Sudafed from a nearby pharmacy. After arriving at the home, Miles began to crush the Sudafed in preparation to make methamphetamine. Meanwhile, Tucker left to retrieve lye—another methamphetamine ingredient—from his home to use in the manufacturing process. After returning from his trip to get the lye, Tucker fell asleep on the couch. He later awoke to the sounds of Miles screaming and saw Miles's clothing burning. Tucker grabbed a couch cushion and began hitting Miles with it, trying to extinguish the flames. Struggling to contain the fire, Tucker then removed Miles's denim shorts to fully rid him of the flames. With Miles no longer on fire, the trio rushed out of the residence, dropping the Coleman fuel container by the front door as they fled, leaving the house in flames.

Young also spoke to law enforcement and confirmed key details from Tucker's account. Before going to the home, the trio bought Sudafed together at a pharmacy. And like Tucker, Young awoke from a nap to the sounds of Miles screaming about a fire. Young told officers that in their frantic efforts to put out the fire, one of the other men told him not to put water on the fire. Young understood this to mean that the fire was from cooking "dope."

As a result, Florida prosecutors charged Tucker, Miles, and Young with arson under Florida Statutes § 806.01. In lieu of an arson conviction, however, Miles pleaded nolo contendere to unlawful possession of a listed chemical (pseudoephedrine) in violation of Florida Statutes § 893.149(1), was adjudicated guilty, and received a sentence of 36 months' probation. Miles later received a sentence of 11 months and 29 days' imprisonment for violating his probation by failing a drug test for marijuana.

*B.*

Several years later, Okaloosa County Sheriff's Office deputies responded to a domestic disturbance call at a residence where they spotted Christopher Miles. Miles retreated into a back bedroom after noticing the deputies. Amber Wirth, who called for the deputies' assistance, told them that she arranged to buy meth from Miles and that the two came to the residence from Miles's home. Their trip from Miles's home to the residence was not a smooth one, however. While at Miles's home, Wirth spotted firearm ammunition in his bedroom. And as she drove Miles from his home to the residence, she noticed what she believed to be a firearm

pointing at her from underneath his jacket. Miles did nothing to alleviate her safety concerns and instead ordered her to "just drive." Wirth also heard Miles toggling the firearm's safety as he told her that she would "die today." Fearing for her life, Wirth contacted law enforcement as soon as Miles left her alone in the vehicle at the residence.

Although the deputies ordered Miles to leave the residence, he ignored their commands. From the back bedroom where Miles had retreated, the deputies heard slamming drawers and doors. After the noise stopped, Miles then exited the residence and surrendered. The subsequent execution of a search warrant for the residence resulted in deputies finding a black SCCY, model CPX-1, 9-millimeter pistol containing one round of ammunition in the chamber and eight rounds in the magazine next to a holster in a bedroom dresser drawer. Miles's girlfriend, who lived at the residence, told deputies that he had access to the firearm that she kept in her bedroom dresser but that she never kept ammunition in the chamber. Subsequent analysis revealed that the pistol and ammunition traveled in interstate commerce. As a result, federal prosecutors indicted Miles on one count of possession of a firearm or ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

## C.

Miles pleaded guilty to violating Section 922(g)(1). After his guilty plea, a United States Probation Officer prepared a presentence investigation report that classified Miles as an armed career

criminal, subject to an enhanced sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e). Under ACCA, "a person who violates section 922(g) . . . and has three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another" is subject to a mandatory minimum sentence of fifteen years' imprisonment. *Id*. § 924(e). The report identified three previous convictions that qualified Miles for ACCA's mandatory minimum: two felony battery convictions under Florida Statutes § 784.041 and the unlawful possession of a listed chemical conviction resulting from the house fire in 2013.

Before sentencing, Miles objected to the report's designation of him as an armed career criminal on the ground that unlawful possession of a listed chemical is not a "serious drug offense" under ACCA. ACCA defines "serious drug offense" by reference to federal- and state-law offenses. A state offense is a "serious drug offense" if it "involv[es] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). Miles contended that his conviction under Section 893.149(1) was not a serious drug offense because it did not involve the conduct of manufacturing a controlled substance.

The district court disagreed with Miles and ruled that possession of a listed chemical under Section 893.149(1) is a serious drug offense because it "involv[es] manufacturing . . . a controlled substance." *See* 18 U.S.C. § 924(e)(2)(A)(ii). In *Shular v. United States*, the Supreme Court held that an offense is one "involving" the kinds of conduct listed in Section 924(e)(2)(A)(ii)—i.e., "manufacturing,

distributing, or possessing with intent to manufacture or distribute"—if the offense's elements "necessarily entail one of th[ose] types of conduct." 140 S. Ct. at 784 (quotations and emphasis omitted); *accord United States v. Conage*, 976 F.3d 1244, 1252 (11th Cir. 2020) (following *Shular*'s construction of "involving"). The district court used the "familiar 'categorial approach'" to determine whether a state offense necessarily entails these kinds of conduct. *See Penn*, 63 F.4th at 1311. Under this approach, the facts of a defendant's underlying conduct are irrelevant, and "a state conviction cannot be an ACCA predicate if the statute of conviction proscribes a broader range of conduct than what Section 924(e)(2)(A)(ii) defines as a 'serious drug offense.'" *Id.* Accordingly, courts "look to the 'least of the acts criminalized by the [state] statute' and ask whether that act falls within the ambit of ACCA's definition of a 'serious drug offense.'" *Id.* (quoting *United States v. Stancil*, 4 F.4th 1193, 1197 (11th Cir. 2021)).

In relevant part, Section 893.149(1) makes it unlawful "to knowingly or intentionally . . . [p]ossess or distribute a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to unlawfully manufacture a controlled substance." Fla. Stat. § 893.149(1). Although the district court acknowledged that the relevant question under *Shular* is whether Section 893.149(1) necessarily entails the conduct of manufacturing, the court also relied on *United States v. Eason*, 919 F.3d 385 (6th Cir. 2019)—a pre-*Shular* decision from the Sixth Circuit. In *Eason*, the Sixth Circuit faced the question whether the purchase of a methamphetamine ingredient with reckless disregard of its intended use

involved the manufacture of methamphetamine. *Id.* at 389. The court answered that question "yes," reasoning that the offense "relates to and is connected with the manufacture of methamphetamine." *Id.* at 391. So the district court in this case concluded Section 893.149(1) also involves manufacturing because "possession . . . of [listed] chemicals is an essential first step in the methamphetamine manufacturing process." The court explained that Florida law ensures that "only conduct that involves manufacturing methamphetamine" is captured by Section 893.149(1) because the statute "requires proof that the defendant possessed . . . the chemical ingredient, knowing, or having reasonable cause to believe that it would be used to produce methamphetamine." The court believed this distinction ensured that the relationship between Section 893.149(1) and the conduct of manufacturing was not too remote for Section 893.149(1) to be a serious drug offense because it excluded "mere inadvertent or unsuspecting possession of a listed chemical."

Having concluded that Section 893.149(1) gave Miles a third qualifying conviction under ACCA, the district court sentenced Miles to ACCA's mandatory minimum fifteen years' imprisonment followed by four years of supervised release.

Miles timely appealed.

## II.

Our review of a district court's determination that a state conviction is a "serious drug offense" under ACCA is *de novo*. *Penn*,

63 F.4th at 1309. We follow federal law when construing ACCA. *Id.* "And state law governs our analysis of state-law offenses." *Id.*

### III.

This appeal asks us to determine whether the Florida crime of unlawful possession of a listed chemical under Section 893.149(1) is a "serious drug offense" under ACCA. That is, does the unlawful possession of a listed chemical "involv[e] manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance"? *See* 18 U.S.C. § 924(e)(2)(A)(ii).

Although this is an issue of first impression for us, we are not writing on a blank slate. After the district court's decision in this case, the Sixth Circuit held that *Shular* abrogated *Eason*—the primary authority upon which the district court relied. *See United States v. Fields*, 53 F.4th 1027, 1048, 1050-51 (6th Cir. 2022). In *Fields*, the Sixth Circuit explained that *Eason* did not apply *Shular*'s "narrower" "necessarily entails" standard and instead asked whether "[p]ossessing a precursor with intent to manufacture may 'relate to and connect with' manufacturing." *Id.* at 1051-52. Applying *Shular*'s standard to the statute at issue in *Fields*—a proscription of the possession of a methamphetamine drug ingredient, like pseudoephedrine, "with the intent to use the [drug ingredient] as a precursor to manufacturing methamphetamine"—the Sixth Circuit held that offense did not necessarily entail the conduct of manufacturing. *Id.* at 1049-52 (quoting Ky. Rev. Stat. § 218A.1437(1)). Accordingly, it was not a "serious drug offense." *Id.* at 1052.

21-12609                 Opinion of the Court                    11

We think the Sixth Circuit's reasoning in *Fields* is persuasive and reach the same result here. We divide our discussion into three parts. First, we identify the least culpable conduct criminalized by Section 893.149(1) that is relevant to Miles's offense. That conduct is the unlawful possession of a listed chemical with reasonable cause to believe it will be used to manufacture a controlled substance. Second, we conclude that possessing a listed chemical with reasonable cause to believe it will be used to manufacture is not itself "manufacturing" or "possessing with intent to manufacture" under Section 924(e)(2)(A)(ii). Third, we conclude that possessing a listed chemical with reasonable cause to believe it will be used to manufacture does not "necessarily entail" the conduct of manufacturing.

*A.*

We follow the categorical approach to define the state-law offense that we compare to ACCA's definition of "serious drug offense" in Section 924(e)(2)(A)(ii). That approach requires us to identify the least culpable conduct prohibited by Section 893.149(1) relevant to Miles's conviction. *See Penn*, 63 F.4th at 1311.

There is no dispute that the least culpable conduct relevant to Miles's conviction is the "[p]ossess[ion] . . . [of] a listed chemical . . . having reasonable cause to believe[] that [it] will be used to unlawfully manufacture a controlled substance." Fla. Stat. § 893.149(1)(b). To be sure, if a state statute is divisible—that is, "it 'lists a number of alternative elements that effectively create several different crimes'"—we apply a "modified categorical

approach" by which we conduct the categorical approach as to only the alternative elements on which a defendant's state conviction is based. *Spaho v. U.S. Att'y Gen.*, 837 F.3d 1172, 1176-77 (11th Cir. 2016) (quoting *Donawa v. U.S. Att'y Gen.*, 735 F.3d 1275, 1281 (11th Cir. 2013)). And Section 893.149(1) proscribes both the possession of a listed chemical (a) "with the intent to unlawfully manufacture a controlled substance," and (b) "knowing, or having reasonable cause to believe, that the listed chemical will be used to unlawfully manufacture a controlled substance." Fla. Stat. § 893.149(1). But even if Section 893.149(1) were divisible and the modified categorical approach applied, the record does not reflect any particular basis for Miles's conviction. The district court held that the least culpable conduct forming the basis of Miles's conviction is the possession of a listed chemical with reasonable cause to believe it will be used to manufacture a controlled substance. Neither party disputes that conclusion on appeal. And so, we work with that conclusion too.

*B.*

The government's first argument that Section 893.149(1) is a "serious drug offense" turns on the ordinary meaning of "manufacturing" in Section 924(e)(2)(A)(ii). The government contends that possessing a listed chemical with reasonable cause to believe it will be used to manufacture *is* manufacturing a controlled substance. In other words, the government says there is no question that the offense "necessarily entail[s]" manufacturing a controlled substance because possessing a listed chemical with reasonable

cause to believe it will be used to manufacture *is itself manufacturing*. This argument carried the day in *Penn*, in which we held that the Florida crime of attempting to transfer drugs "*is a proscription of distribution itself*" because "distributing" as ACCA uses the term includes "attempting to transfer" something. 63 F.4th at 1316. But the argument does not prevail here.

Starting, as we always do, with the ordinary meaning of "manufacturing," *see United States v. Chinchilla*, 987 F.3d 1303, 1308 (11th Cir. 2021), the act of possessing a chemical with reasonable cause to believe it will be used to manufacture something else fails to fit within the meaning of the word. In ordinary language, the word "manufacture" means "to make" something from raw materials. *The Random House Dictionary of the English Language* 1172 (2d unabridged ed. 1987); *accord American Heritage Dictionary* 764 (2d coll. ed. 1982); *The Oxford English Dictionary* 341 (2d ed. 1989). Making something is a process, sometimes taking many steps. But that process does not begin until a person starts working with the component parts. Thus, no ordinary person would say that aluminum miners are manufacturing a plane when they dig the metal from the ground. Nor would an ordinary person say the miners were manufacturing even if the miners had reason to believe that someone will use the aluminum to manufacture a plane. Simply put, doing an act with reason to believe manufacturing will occur later does not convert the act into manufacturing itself. For that reason, possessing a listed chemical—one of the raw materials for making a drug—does not amount to manufacturing the drug even if the

possessor has reasonable cause to believe that the chemical will be used to do so.

This reading of "manufacture" in ACCA finds support in another federal statute on the same subject: the Controlled Substances Act. *See Penn*, 63 F.4th at 1313-14 (reading "distributing" in ACCA *in pari materia* with "distribute" in the Controlled Substances Act). The Controlled Substances Act defines "manufacture" as "the production, preparation, propagation, compounding, or processing of a drug." 21 U.S.C. § 802(15). None of those definitional terms suggest that "manufacturing" covers the possession of a raw material with reason to believe it will be used to manufacture a drug. Rather, the definitional terms in the Controlled Substances Act are consistent with our reading of "manufacturing" to cover the process of making something. They all suggest that the manufacturer is combining, altering, or otherwise working with the raw materials.

This understanding of the Controlled Substance Act's definition of "manufacture"—and therefore our reading of "manufacturing" in ACCA—is bolstered by the substantive offenses under the Controlled Substances Act. The Controlled Substances Act separately criminalizes manufacturing a drug and possessing a listed chemical with reasonable cause to believe it will be used to manufacture that drug. *Compare* 21 U.S.C. § 841(a)(1) (prohibiting "manufacture" of "a controlled substance"), *with id.* § 841(c)(2) (prohibiting "possess[ion]" of "a listed chemical knowing, or having reasonable cause to believe, that the listed chemical will be used to

manufacture a controlled substance"). These distinct offenses stand in sharp contrast to the overlap between the crimes of distribution and attempted transfer, which we evaluated in *Penn*. *Cf.* 63 F.4th at 1315 (explaining 21 U.S.C. § 841(a)(1) "proscribes the knowing or intentional distribution of a controlled substance, which federal law defines to include attempted transfers").

One could make the related argument that the crime of possessing a listed chemical with reasonable cause to believe it will be used to manufacture is the same as "possessing with intent to manufacture"—another kind of conduct that Section 924(e)(2)(A)(ii) uses to define "serious drug offense." But that argument misses the mark too. This is so for two reasons.

First, the listed chemical that Miles was convicted of possessing is not itself a controlled substance. We read ACCA's use of the phrase "possessing with intent to manufacture" to mean possessing *a controlled substance* with intent to manufacture. *See* 18 U.S.C. § 924(e)(2)(A)(ii). This reading follows from the text of Section 924(e)(2)(A)(ii). The section lists a series of three kinds of conduct ("manufacturing, distributing, or possessing with intent to manufacture or distribute") and follows that list with a single object: "a controlled substance." *Id.* Placing that object next to each word that it modifies, Section 924(e)(2)(A)(ii) reads: "manufacturing [a controlled substance], distributing [a controlled substance], or possessing [a controlled substance] with intent to manufacture or distribute." This reading accords with the interpretive principle that we read a modifier that follows a "straightforward, parallel

construction that involves all nouns or verbs in a series" to modify each of the terms in the series. Antonin Scalia & Bryan A. Garner, *Reading Law* 147 (2012). To read "possessing with intent to manufacture" to include possessing listed chemicals would require us to (1) read a gap into the statute (i.e., leaving "possessing" without any object in the statute's text), and (2) fill that gap with words not in the statute's text (i.e., a listed chemical). But we will not rewrite a statute to say something that Congress did not enact.

Second, even if the definition of "serious drug offense" did extend to possession of a listed chemical, it does so only for possession with "*intent* to manufacture." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). Florida's unlawful possession of a listed chemical offense, however, covers possession with *reasonable cause to believe* the listed chemical will be used to manufacture. Fla. Stat. § 893.149(1). So, too, for that reason, Miles's conviction under Section 893.149(1) is not a conviction for "possess[ion] with intent to manufacture."

## C.

The government makes a second argument that Section 893.149(1) is a crime "involving manufacturing." The government contends that possessing a listed chemical with reasonable cause to believe it will be used to manufacture is sufficiently related to the conduct of manufacturing a controlled substance to bring it under the auspices of Section 924(e)(2)(A)(ii). That is, even if the crime is not manufacturing itself, the government argues it is close enough to manufacturing to "involv[e] manufacturing." We believe that argument stretches "involving" too far.

21-12609                Opinion of the Court                17

To start, our precedent requires us to read "involving" restrictively to mean "necessarily entail[s]." As we noted above, the Supreme Court in *Shular* said that "involving" means to "necessarily entail one of the types of conduct identified in § 924(e)(2)(A)(ii)." 140 S. Ct. at 784 (cleaned up). We treated the Court's gloss on "involving" as binding in *Conage*. *See* 976 F.3d at 1252. So for better or worse, we are stuck with it in this case. *See In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (explaining prior-panel-precedent rule).

In *Fields*, the Sixth Circuit, addressing an offense materially identical to Section 893.149(1), held that possession of a methamphetamine precursor with intent to manufacture does not "necessarily entail" the conduct of manufacturing. 53 F.4th at 1049-52. In doing so, the court determined that *Shular* abrogated *Eason*, the Sixth Circuit decision on which the district court in this case relied. *Id.* at 1051-52. The court explained: "Possessing a precursor with intent to manufacture may 'relate to and connect with' manufacturing, but the *Shular* question is whether it 'necessarily entails' manufacturing." *Id.* Under the *Shular* test, the court reasoned the offense at issue did not involve manufacturing for two reasons. First, the state statute "was meant to apply when a defendant was not yet even *capable* of manufacturing." *Id.* at 1051. Second, manufacturing is not a necessary consequence of the possession. *Id.*

We find *Fields* persuasive and likewise hold that possessing a listed chemical with reasonable cause to believe it will be used to manufacture a controlled substance fails to satisfy the "necessarily

entail[s]" standard from *Shular*. "[N]ecessarily entail[s]" requires a close connection between the state offense and the conduct covered by Section 924(e)(2)(A)(ii). Whatever it means to "necessarily entail" the conduct of manufacturing, Section 893.149(1) is too far removed from manufacturing itself to do so. The *actus reus* of possessing a drug ingredient is not itself manufacturing nor does it mean that manufacturing will occur. *Fields*, 53 F.4th at 1051. And the *mens rea* of "reasonable cause to believe" that the chemical will be used to manufacture falls short in two respects of its own: it is more attenuated from manufacturing than an actual intent to manufacture, and it does not require that a person with reasonable cause to believe that manufacturing will occur be the one who will manufacture drugs. Both the *actus reus* and *mens rea* of this offense reflect that it is a mere first step toward *someone likely* manufacturing a controlled substance. That generalized likelihood is not close enough to "necessarily entail[ing]" manufacturing.

But even apart from *Shular*, the surplusage canon would require us to read "involving" more narrowly than the government wants. If the Florida crime of possession of a listed chemical offense "involv[ed]" the conduct of manufacturing under Section 924(e)(2)(A)(ii), then a state statute prohibiting possession *of a controlled substance* with intent to manufacture would too. But such a reading of Section 924(e)(2)(A)(ii) would render the phrase "possessing with intent to manufacture" superfluous because any offense for possessing a controlled substance with intent to manufacture would necessarily be an offense involving manufacturing. *See Fields*, 53 F.4th at 1059 (Murphy, J., concurring). The surplusage

21-12609                Opinion of the Court                19

canon counsels us to avoid an interpretation that makes another part of the statutory text needlessly superfluous. Scalia & Garner, *supra*, at 174. But creating superfluity is precisely what we would do by reading "involving manufacturing" broadly enough to cover all kinds of possession with intent to manufacture.

Having concluded that this Florida crime is not a "serious drug offense," we emphasize three aspects of our decision for the benefit of other courts and other panels of our court.

First, our decision says nothing about whether inchoate offenses may count as serious drug offenses. The crime of attempted manufacturing, for example, might be close enough to manufacturing itself that it is covered by the phrase "involving manufacturing." *E.g.*, *State v. Odom*, 56 So. 3d 46, 49-50 (Fla. Dist. Ct. App. 2011) (concluding evidence that the defendant "applied chemicals to Sudafed" and gave "instructions to further the manufacturing process" was sufficient to sustain a conviction for attempted manufacture of methamphetamine). We leave that question for another day.

Second, our conclusion that this Florida offense is not a "serious drug offense" highlights an irrational distinction between federal- and state-law predicates under ACCA. Among the federal offenses that are "serious drug offense[s]" are all the offenses under the Controlled Substances Act. 18 U.S.C. § 924(e)(2)(a)(i). One such offense uses *materially identical language* to the language of Florida's Section 893.149(1). *Cf.* 21 U.S.C. § 841(c)(2). There is no good reason why the applicability of "ACCA's fifteen-year mandatory

minimum [sh]ould turn on whether a state court or federal court entered the conviction." *Penn*, 63 F.4th at 1315. But it does here. That result is the consequence of the language that Congress chose and the Supreme Court's construction of that language.

Third, we cannot overlook the absurd, factual reality of our decision. Miles was convicted under Section 893.149(1) because he was *literally* manufacturing methamphetamine when he set himself and a house on fire. But under the categorical approach, the facts of the conviction do not matter. So we can add this case to the long line of cases where the categorical approach leads to an unusual and, some might say, unjust result. As for that problem, only "Congress [can] act to end this ongoing judicial charade." *Ovalles v. United States*, 905 F.3d 1231, 1253 (11th Cir. 2018) (en banc) (William Pryor, J., concurring). In the meantime, district courts may use their discretion to impose sentences that reflect the true facts of an offender's criminal history and personal circumstances, even if they are unaccounted for in the mandatory minimums that would otherwise apply. *See United States v. Garcon*, 54 F.4th 1274, 1284 (11th Cir. 2022) (en banc); *id.* at 1307 (Brasher, J., dissenting).

## IV.

We hold the offense under Florida Statutes § 893.149(1) for "[p]ossess[ion] . . . [of] a listed chemical . . . having reasonable cause to believe[] that [it] will be used to unlawfully manufacture a controlled substance" is not a "serious drug offense" under ACCA. Because that leaves Miles with only two qualifying convictions for ACCA purposes, he does not satisfy the statute's definition of an

21-12609                Opinion of the Court                21

armed career criminal. Accordingly, Miles's sentence is **VACATED**, and this case is **REMANDED FOR RESENTENCING**.