**FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 24-10545

————————————————

ELISABETH KOLETAS,

Plaintiff-Appellant,

*versus*

UNITED STATES OF AMERICA,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 2:23-cv-00733-SPC-KCD

————————————————

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

The Federal Tort Claims Act (FTCA) effects a broad waiver of sovereign immunity for torts committed by United States employees. 28 U.S.C. §§ 1346(b), 2674. Although this broad waiver is subject to several exceptions, including 28 U.S.C. § 2680(h)'s intentional tort exception, Congress enacted a "law enforcement proviso" to § 2680(h), preserving the FTCA's waiver of sovereign immunity for certain intentional torts committed by a defined class of "investigative or law enforcement officers."

This appeal asks us to determine whether Transportation Security Officers authorized to conduct searches of people and their property at airports fall within that defined class, which comprises "officer[s] of the United States" who are "empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." 28 U.S.C § 2680(h).

Because federal regulations expressly authorize Transportation Security Officers to conduct searches of both people and property to prevent prohibited items from being brought onto aircraft, we join our five sister circuits that have addressed this issue in holding that Transportation Security Officers are "investigative or law

enforcement officers" under the plain language of § 2680(h)'s law enforcement proviso.

## I.    FACTUAL AND PROCEDURAL HISTORY[1]

On June 23, 2022, Plaintiff Elisabeth Koletas was traveling through Southwest Florida International Airport. Upon arriving at the security screening area, Koletas, four months pregnant, requested to undergo a pat-down instead of walking through a body scanner. She explained that she was concerned about the effects of radiation emitted from the body scanner on her pregnancy. Her request was granted.

Koletas was then directed to the side of the security screening area, where Transportation Security Officer (TSO) Sarno performed a pat-down search of Koletas. During this search, Sarno engaged in a prolonged probe of Koletas's vaginal area, homing in on unidentified material in Koletas's underwear. Koletas explained to Sarno that the unidentified material was a piece of toilet paper to stem vaginal bleeding resulting from her pregnancy. Skeptical of this explanation, Sarno moved Koletas to an isolated room to conduct further searching, and left to retrieve her supervisor.

Sarno returned with Supervising TSO Shane, who conducted further probing of Koletas's underwear and vaginal area.

---

[1] Consistent with the standard of review for motions to dismiss, we take our factual summary from the allegations in Koletas's complaint and construe the allegations in the light most favorable to the plaintiff. *See Newbauer v Carnival Corp.*, 26 F.4th 931, 933 n.1 (11th Cir. 2022).

Shane asked Koletas to lift up her dress and expose her underwear so that Shane could see the purported toilet paper. Koletas demurred, suggesting instead that she could remove the toilet paper from her underwear and show it to Shane. But Shane rejected Koletas's suggestion and again directed her to lift up her dress. Koletas relented. Shane then pulled down Koletas's underwear, exposed her vaginal area, and removed the bloodied toilet paper. No prohibited items were uncovered. So Shane permitted Koletas to leave the room and proceed through security.

Koletas was deeply shaken by her encounter with Sarno and Shane, and developed a host of psychological and physical symptoms as a result of enduring their strip search. Accordingly, after exhausting her administrative remedies, on September 13, 2023, Koletas filed a FTCA suit against the United States, alleging battery, false imprisonment, intentional infliction of emotional distress, and negligence.

The United States moved to dismiss for lack of subject-matter jurisdiction, arguing that § 2680(h)'s intentional tort exception granted the United States sovereign immunity from the battery and false imprisonment allegedly committed by TSOs Sarno and Shane.[2] Koletas responded that the Third and Eighth Circuits had recently published decisions, concluding that TSOs fall under §

---

[2] The government argued that Koletas's other claims—intentional infliction of emotional distress and negligence—were derivative claims arising from the same underlying conduct as her battery and false imprisonment claims and would therefore rise and fall with them.

2680(h)'s law enforcement proviso carve-out of the intentional tort exception.

The district court agreed with the government. But the district court's economical dismissal order did not grapple at all with the thorough analyses provided by the Third and Eighth Circuits in the cases cited by Koletas, nor with other then-recently published decisions from the Fourth and Ninth Circuits reaching the same conclusion. Instead, relying exclusively on our unpublished, *per curiam* decision in *Corbett v. Transp. Sec. Admin.*, 568 F. App'x 690 (11th Cir. 2014) (*Corbett I*), the district court concluded that TSOs are not "officer[s] of the United States" under § 2680(h)'s law enforcement proviso, and are therefore subject to § 2680(h)'s intentional tort exception to the FTCA's sovereign immunity waiver. Accordingly, the district court granted the government's motion to dismiss for lack of subject-matter jurisdiction. Koletas timely appealed.

## II.    STANDARD OF REVIEW

We review de novo the dismissal of a complaint for lack of subject-matter jurisdiction due to sovereign immunity. *Smith v. United States*, 14 F.4th 1228, 1230 (11th Cir. 2021).

## III.    ANALYSIS

The United States is generally immune from suit unless Congress explicitly waives the government's immunity. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). As such, Congress enacted the FTCA, which "waives the Government's immunity from suit in sweeping language." *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 492 (2006) (quoting *United States v. Yellow Cab Co.*, 340 U.S. 543, 547

6                    Opinion of the Court                    24-10545

(1951)).  The FTCA provides that federal district courts possess exclusive jurisdiction over claims against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b)(1).

But the FTCA subjects this "broad waiver of sovereign immunity" to 13 exceptions. *Millbrook v. United States*, 569 U.S. 50, 52 (2013); *see* 28 U.S.C. § 2680(a)–(n).  As pertinent to this appeal, § 2680(h) of the FTCA preserves sovereign immunity for various intentional torts, including "assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights." Thus, Koletas's primary claims[3] for battery and false imprisonment generally could not be asserted against the United States.

Our inquiry does not stop there, however.  In 1974, Congress added a carve-out to § 2680(h)'s preservation of sovereign immunity that covers certain torts arising out of the wrongful conduct of "investigative or law enforcement officers of the United States." *Millbrook*, 569 U.S. at 52–53.  This carve-out, generally referred to as the "law enforcement proviso,"[4] provides:

---

[3] Koletas does not appeal the district court's holding that her other two claims are purely derivative for purposes of sovereign immunity.

[4] This terminology is obviously inexact, as the proviso refers to both "investigative officers" and "law enforcement officers."  Nevertheless, because this

> [W]ith regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. *For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.*

28 U.S.C. § 2680(h) (emphasis added). In sum, § 2680(h)'s law enforcement proviso waives sovereign immunity for certain intentional torts—including battery and false imprisonment—committed by "investigative or law enforcement officers," which the proviso defines as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law."

The question presented in this appeal is whether a TSO qualifies as "any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law." If so, the United States is not immune from Koletas's suit.

Over the past five years, five of our sister circuits have published decisions on this issue. All five concluded that the law

---

terminology is widely used by other courts, we adopt it throughout to maintain stylistic consistency.

8                    Opinion of the Court                    24-10545

enforcement proviso's definition of "investigative or law enforcement officers" unambiguously encompasses TSOs. *See Mengert v. United States*, 120 F.4th 696 (10th Cir. 2024); *Leuthauser v. United States*, 71 F.4th 1189 (9th Cir. 2023); *Osmon v. United States*, 66 F.4th 144 (4th Cir. 2023); *Iverson v. United States*, 973 F.3d 843 (8th Cir. 2020); *Pellegrino v. U.S. Trans. Sec. Admin.*, 937 F.3d 164 (3d Cir. 2019) (en banc). We agree with our sister circuits: TSOs are plainly "officer[s] of the United States" who are "empowered by law to execute searches."

### A. Officer of the United States

The FTCA does not define "officer," so we "construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993). "Ordinarily, a word's usage accords with its dictionary definition." *Yates v. United States*, 574 U.S. 528 (2015). The term "officer" naturally encompasses a Transportation Security *Officer*. And dictionary definitions of the term "officer" contemporaneous with the law enforcement proviso's enactment confirm that natural intuition. The Fourth Edition of Black Law's Dictionary defines an "officer" as "[o]ne who is charged by a superior power (and particularly by government) with the power and duty of exercising certain functions" or "[o]ne who is invested with some portion of the functions of the government to be exercised for the public benefit." *Officer*, Black's Law Dictionary (4th ed. rev. 1968). Likewise, Webster's Third New International Dictionary defines "officer" as "one charged with a duty" or "one who is appointed or elected to serve in a position of trust, authority, or

24-10545　　　　　Opinion of the Court　　　　　9

command esp. as specif. provided for by law." *Officer*, Webster's Third New International Dictionary (1971).

We agree with our sister circuits that TSOs easily satisfy these definitions. *See Pellegrino*, 937 F.3d at 170; *Iverson*, 973 F.3d at 848; *Leuthauser*, 71 F.4th at 1194; *Mengert*, 120 F.4th at 705.[5] Congress, through the Aviation and Transportation Security Act (ATSA) vests TSOs with the power to conduct airport screenings. *See* 49 U.S.C. § 44901(a). And the ATSA's regulations provide that the screenings executed by TSOs facilitate passenger safety and national security—i.e. "public benefits"—by preventing passengers from bringing "weapons, explosives, and incendiaries" onto planes. 49 C.F.R. § 1540.4. TSOs also serve in positions of "authority" and "trust," as the Transportation Security Administration (TSA) holds TSOs out to the public as officers through their title and uniform, which contains a badge prominently displaying "US Officer." In fact, the government chose to vest TSOs with their "officer" title and badges precisely to cultivate the public's respect for TSO authority.[6]

---

[5] The Fourth Circuit did not address this issue because the government there did not even bother to "challenge[] the magistrate judge's conclusion that [TSOs] are 'officers of the United States' within the meaning of the law enforcement proviso." *Osmon*, 66 F.4th at 147–48.

[6] TSA stated that it altered TSOs' uniforms, including adding badges, to "address[] officers' concerns of utility, respect, and confidence, and . . . as a readily identifiable symbol of TSA's security mission and officers' role of keeping the traveling public safe." Press Release, Transportation Security Officers Have Renewed Focus and New Look on Seventh Anniversary of 9/11, Transp. Sec. Admin. (Sept. 11, 2008),

Unlike in its appeals before several of our sister circuits, the government here does not push back on the above analysis.  To the extent that the government challenges whether TSOs are "officer[s] of the United States," it does so primarily by maintaining that we—like the district court—ought to uphold our unpublished, *per curiam* decision in *Corbett I* that concluded otherwise.  Because both the government and the district court rely heavily on *Corbett's* authoritative weight, we briefly address the unpublished decision.

First, we note that *Corbett I* is not precedential.  The district court's sparse opinion relied entirely on *Corbett I* without any analysis of our sister circuits' published decisions refuting its reasoning, which the parties extensively briefed.  While such an approach may be appropriate where we have adjudicated the issue at bar in a published decision, "[u]npublished decisions are not binding authority and they are 'persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue.'" *Collado v. J. & G. Transp., Inc.*, 820 F.3d 1256, 1259 n.3 (11th Cir. 2016) (quoting *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, 1260 n.3 (11th Cir. 2007)); *see* 11th Cir. R. 36-2.  Accordingly, we caution district

---

https://www.tsa.gov/news/releases/2008/09/11/transportation-security-officers-have-renewed-focus-and-new-look-seventh.  "The attire aims to convey an image of authority to passengers, who have harassed, pushed and in a few instances punched screeners. 'Some of our officers aren't respected,' TSA spokeswoman Ellen Howe said."  Thomas Frank, TSA's New Policelike Badges a Sore Point with Real Cops, ABC News (June 23, 2008), https://abcnews.go.com/Travel/story?id=517321 & page=1.

courts from relying on our unpublished decisions purely because they are *our* decisions, without carefully evaluating the legal suasion of an unpublished Eleventh Circuit opinion. *See McNamara v. Gov't Emps. Ins. Co.*, 30 F.4th 1055, 1061 (11th Cir. 2022).

Second, we do not find *Corbett I* persuasive, as it focused on the FTCA's distinction between a federal "employee" and an "officer." 568 F. App'x at 701; *compare* 28 U.S.C. § 1346(b)(1) (waiving immunity for claims based on the acts or omissions of "any *employee of the Government…*") *with* 28 U.S.C. § 2680(h) (waiving immunity for claims based on the acts of "any *officer* of the United States." (emphases added)). We reasoned that the law enforcement proviso purposely used the more limited term "officer" to exclude some subset of government employees who do not qualify as officers. *Id.*

While we correctly concluded in *Corbett I* that the law enforcement proviso does not encompass all federal employees, *Corbett I* did not proceed to analyze the text of the law enforcement proviso or the FTCA to ascertain whether it does encompass TSOs. Instead, *Corbett I* assumed that because *another* statute—the ATSA—distinguished between TSOs, which it designated as "Federal Government *employee[s]*, and TSA "law enforcement *officers*,"[7] TSOs do not qualify as officers under the law enforcement proviso.

---

[7] And only those so designated may "carry a firearm," "make an arrest", or "seek and execute warrants for arrest or seizure of evidence." 49 U.S.C. § 114(p)(2)(A)-(C).

*Corbett I*, 568 F. App'x at 701 (quoting 49 U.S.C. §§ 44901, 114(p)(1)) (emphases added).

As our sister circuits noted, the reasoning in *Corbett I* is not persuasive for two reasons. First, it did not conduct a textual analysis of the relevant statute, the FTCA. *See e.g., Iverson*, 973 F.3d at 850 (explaining that the ATSA postdates the FTCA and cannot "silently alter[]" the scope of a statute enacted 30 years prior). Second, as the Third Circuit explained, it is perfectly consistent for TSOs to be classified as both "employees" and "officers," but not "law enforcement officers." *See Pellegrino*, 937 F.3d at 171 ("[T]here is no textual indication that only a specialized 'law enforcement officer' in the [ATSA] qualifies as an 'officer of the United States' under the [FTCA]."). [8]

Because the government does not meaningfully defend *Corbett I*'s holding that TSOs are not "officers" under the law enforcement proviso, and because we are persuaded by the plain-meaning analysis conducted by our sister circuits, we conclude that TSOs qualify as "officers" under the proviso.

---

[8] In fact, both the ATSA and FTCA define "employee" to include "officer." *See* 49 U.S.C. § 44901(a) (cross referencing 5 U.S.C. § 2105(a) (defining employee as "an officer and an individual")) (ATSA); 28 U.S.C. § 2671 (providing that an "[e]mployee of the Government" includes "officers or employees of any federal agency") (FTCA). And the law enforcement proviso's reference to both "*investigative* or law enforcement officers" reinforces the notion that the proviso encompasses "officers" beyond just law enforcement officers. *See* § 2680(h) (emphasis added).

### B. Empowered by Law to Execute Searches

So TSOs are "officer[s] of the United States," but are they investigative officers? We agree with our five sister circuits that TSOs are investigative officers under the law enforcement proviso because they are "empowered by law to execute searches." § 2680(h); *see Pellegrino*, 937 F.3d at 172–77; *Iverson*, 973 F.3d at 851–53; *Leuthauser*, 71 F.4th at 1196–97; *Osmon*, 66 F.4th at 148–49; *Mengert*, 120 F.4th at 706–10. TSO "screenings" are searches (1) as a matter of the ordinary meaning of the term "search"; (2) under the Fourth Amendment; and (3) under the Supreme Court's definition in *Terry v. Ohio*, 392 U.S. 1 (1968).

#### 1. Ordinary Meaning

The term "search" naturally describes a TSO's primary function. Indeed, there are few jobs more closely associated by the public with the notion of a "search" than a TSO; it is effectively the bulk of their job. And again, dictionaries contemporaneous with the enactment of the law enforcement proviso confirm this understanding. Webster's Third New International Dictionary defines a search as: "to examine (a person) thoroughly to check on whatever articles are carried or concealed." *Search*, Webster's Third New International Dictionary (1971). Likewise, the Fourth Edition of Black's Law Dictionary defines a search as "an examination or inspection ... with [a] view to discovery of stolen, contraband, or illicit property." *Search*, Black's Law Dictionary (4th ed. rev. 1968).

The ATSA's description of a TSO's job responsibilities readily comports with these definitions. Per 49 U.S.C. §§ 44901(a) &

g(4), TSOs perform "screening[s] of all passengers and property," which include "physical *search[es]*," to assess whether any cargo "possesses a threat to transportation security." (emphasis added); *see also* 49 U.S.C. § 44935(f)(1)(B)(v) ("[s]creeners who perform pat-downs or hand-held metal detector *searches* of individuals shall have sufficient dexterity and capability to thoroughly conduct those procedures over an individual's entire body." (emphasis added)).

TSA's own regulations and descriptions of its practices further confirm that TSO screenings constitute "searches" under the term's ordinary meaning. Those regulations provide that airlines "must refuse to transport…[a]ny individual who does not consent to a *search* or inspection of his or her person" and "[a]ny property of any individual…who does not consent to a *search* or inspection of that property…" 49 C.F.R. § 1544.201(c) (emphases added). And such searches are undertaken with "millimeter wave advanced imaging technology," to "safely screen[] passengers … for metallic and non-metallic threats, including weapons and explosives, which may be concealed under clothing." Security Screening, Trans. Sec. Admin., https://www.tsa.gov/travel/security-screening (select "Screening Technology" tab) (last visited February 13, 2025). TSOs may also conduct "[p]at-down procedures," which include "inspection[s] of the head, neck, arms, torso, legs, and feet." *Id.* (select "Pat-Down Screening" tab). Such techniques "are used to determine whether prohibited items or other threats to transportation security are concealed on the person." *Id.*

### 2. Fourth Amendment

24-10545                Opinion of the Court                15

In *Corbett v. Transp. Sec. Admin.*, 767 F.3d 1171, 1179 (11th Cir. 2014) (*Corbett II*), a published decision, we joined many of our sister circuits in holding that TSO screenings constitute "reasonable administrative search[es] under the Fourth Amendment." *See, e.g.,* *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 653 F.3d 1, 10–11 (D.C. Cir. 2011); *United States v. Aukai*, 497 F.3d 955, 962–63 (9th Cir. 2007) (en banc); *United States v. Hartwell*, 436 F.3d 174, 178 (3d Cir. 2006); *United States v. Edwards*, 498 F.2d 496, 500 (2d Cir. 1974). Such searches may not require individualized suspicion and the execution of a warrant, but they still qualify as searches.

Indeed, the Supreme Court itself has described a TSO screening as an administrative search. *See Nat'l Treasury Emps. Union v. Von Raab*, 489 U.S. 656, 675 n.3 (1989) (referring to "the Federal Government's practice of requiring the search of all passengers seeking to board commercial airliners, as well as the search of their carry-on luggage, without any basis for suspecting any particular passenger of an untoward motive," and approvingly explaining that "the lower courts that have considered the question have consistently [applied precedents dealing with administrative searches and] concluded that such searches are reasonable under the Fourth Amendment").

### 3. *Terry v. Ohio*

In *Terry*, the Supreme Court explained that "it is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.'" 329

16                    Opinion of the Court                    24-10545

U.S. at 16. "Careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons" perfectly encapsulates a TSOs responsibilities. *Id.* As the Third Circuit noted, a TSO may "thoroughly conduct" an exploration "over an individual's entire body." *Pellegrino*, 937 F.3d at 173 (quoting 49 U.S.C. § 44935(f)(1)(B)(v)). And the TSA website elaborates that TSOs inspect "sensitive areas such as breasts, groin, and the buttocks" and must use "sufficient pressure to ensure detection." *Id.* (quoting Transp. Sec. Admin., Security Screening, https://www.tsa.gov/travel/security-screening (last visited February, 13, 2025).

In sum, TSOs execute highly invasive physical and non-physical screening procedures to detect whether passengers are carrying concealed contraband or other dangerous and prohibited items. That is a paradigmatic search.

The government advances three challenges to our conclusion that TSO administrative searches constitute "searches" under the law enforcement proviso.[9]

*First*, the government notes that the law enforcement proviso's operative phrase is "*execute* searches," which it argues, pointing to several statutes and cases, is a term of art that specifically

---

[9] The government does not dispute that TSOs are "empowered by law" to conduct screenings; the sole dispute is whether TSO screenings constitute "searches" within the context of the law enforcement proviso.

connotes "the traditional police power to execute a warrant or other type of criminal search, such as a search incident to arrest."

This argument is flawed: the operative statutory phrase is "execute searches," not "execute search warrants." Yet every statute and case the government relies on refers to "search *warrants*." *See e.g.*, 18 U.S.C. § 2231(a) ("Whoever forcibly assaults, resists, opposes, prevents, impedes, intimidates, or interferes with any person authorized to serve or execute search warrants[.]"); 22 U.S.C. § 2709(a)(2) ("Under such regulations as the Secretary of State may prescribe, special agents of the Department of State and the Foreign Service may...obtain and execute search and arrest warrants."); *United States v. Ramirez*, 523 U.S. 65, 69 (1998) ("[A]pproximately 45 officers gathered to execute the warrant."); *Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 614 (2007) ("In executing a search warrant officers may take reasonable action to secure the premises and to ensure their own safety and the efficacy of the search.").

Congress's non-inclusion of the term "warrant" in the phrase "execute searches" is therefore notable. As our sister circuits explained, the phrase "execute searches," without any reference to "warrant," indisputably connotes greater breadth "because authority to execute a search does not necessarily imply authority to execute a search *warrant*." *Leuthauser*, 71 F.4th at 1198; *see Bunch v. United States*, 880 F.3d 938, 945 (7th Cir. 2018) ("[S]ection 2680(h) does not require [the officer] to have had authority to seek and execute search warrants; it speaks only of executing searches, and

many searches do not require warrants."); *Osmon*, 66 F.4th at 149 (same).

If anything, the government's examples show that Congress could have included the terms "warrant" or "search warrant" in the law enforcement proviso, just like it did in the statutes the government relies on. *See Pellegrino*, 937 F.3d at 174; *Mengert*, 120 F.4th at 709. Its failure to do so provides good evidence that "execute searches" encompasses more than a traditional police investigative search conducted pursuant to a warrant.

*Second*, the government invokes the *noscitur a sociis* canon, arguing that we must interpret "search" in consonance with the other terms listed in the law enforcement proviso, "seize evidence" and "make arrests," which "necessarily carry criminal connotations."

This canon has no application here. *Noscitur a sociis* is used "where words are of obscure or doubtful meaning." *Iverson*, 973 F.3d at 852–53 (quoting *Russell Motor Car Co. v. United States*, 261 U.S. 514, 520 (1923)); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 226–27 (2008) (rejecting invocation of the canon as an "attempt to create ambiguity where the statute's text and structure suggest none"). But "execute searches" is a "perfectly plain" term. *Russell Motor*, 261 U.S. at 519. The government improperly invokes *noscitur a*

*sociis* to "create [doubt]" as to its meaning, but the canon is used only when we are already in the "domain of ambiguity." *Id.*[10]

*Third*, the government contends that the proviso's use of the term "investigative or law enforcement officer" "naturally evokes" criminal law enforcement, pointing to other statutes using that same phrase.

But as the Tenth Circuit explained, the two statutes the government cites, the Wiretap Act, 18 U.S.C. § 2510(7), and the Foreign Intelligence Surveillance Act, 50 U.S.C. § 1809(b), provide definitions of "investigative or law enforcement officer" that are "materially distinguishable" from the law enforcement proviso's definition. *Mengert*, 120 F.4th at 707 n.6. Both statutes provide definitions of the phrase that expressly implicate criminal law enforcement. *See* 18 U.S.C. § 2510(7) (defining the phrase as "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests

---

[10] Further, the three phrases in the law enforcement proviso, "execute searches," "seize evidence," and "make arrests for violations of Federal law," are listed in the disjunctive, and the Supreme Court has explained "that terms connected in the disjunctive" reflect "an intent" by Congress to give each term "their separate, normal meanings." *Garcia v. United States*, 469 U.S. 70, 73 (1984); *see Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 288 (2010) ("A list of three items, each quite distinct from the other no matter how construed, is too short to be particularly illuminating."). We agree with the Ninth Circuit that "the substantive connection among the terms *execute searches*, *seize evidence*, and *make arrests* is not so tight or self-evident as to demand that we rob any one of them of its independent and ordinary significance." *Leuthauser*, 71 F.4th at 1199.

for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses"); 50 U.S.C. § 1809(b) (defining the phrase as someone "engaged in the course of his official duties and the electronic surveillance was authorized by and conducted pursuant to a search warrant or court order of a court of competent jurisdiction.").

By contrast, the law enforcement proviso gives its own specific definition of "investigative or law enforcement officer." *See* § 2680(h) ("*For the purpose of this subsection*, 'investigative or law enforcement officer' means…" (emphasis added)). And that definition does not expressly implicate criminal law enforcement. It therefore makes little sense to look to those other statutes for clarification of the scope of "investigative or law enforcement officer" as specifically used in the law enforcement proviso. *See Pellegrino*, 937 F.3d at 164 ("When a statute includes an explicit definition, we must follow that definition, even if it varies from that term's ordinary meaning.").[11]

---

[11] The government also points to two of our decisions, *Equal Emp. Opportunity Comm'n v. First Nat. Bank of Jackson*, 614 F.2d 1004 (5th Cir. 1980) and *Solomon v. United States*, 559 F.2d 309 (5th Cir. 1977), that it claims held that officers who conduct only administrative searches "do[] not fall within the law enforcement proviso." Both cases are distinguishable. In *Equal Emp. Opportunity Comm'n*, we held that EEOC agents do not fall under the law enforcement proviso because they "are not…given the authority to execute searches" despite having the ability to "access" and "examin[e]" "any evidence of a person being investigated." 614 F.2d at 1007–08. Unlike EEOC agents, however, TSOs are authorized to conduct searches of individuals and their effects. That function fits neatly into the law enforcement proviso; an EEOC agent's ability

24-10545                Opinion of the Court                21

### C. For Violations of Federal Law

The law enforcement proviso applies to any officer who is authorized "to execute searches, to seize evidence, or to make arrests *for violations of Federal law*."  28 U.S.C. § 2680(h) (emphasis added).  The government contends that this modifying phrase "refers to "criminal violations," and that TSO searches, as suspicionless administrative searches, cannot qualify.

As an initial matter, "for violations of Federal law" presumptively does not modify "to execute searches."  *See Pellegrino*, 937 F.3d at 177.  Per the rule of the last antecedent, "a list of terms or phrases followed by a limiting clause…should ordinarily be read as modifying only the noun or phrase that it immediately follows."  *Lockhart v. United States*, 577 U.S. 347, 351 (2016).  "Th[is] rule reflects the basic intuition that when a modifier appears at the end of a list, it is easier to apply that modifier only to the item directly before it."  *Id.* at 351–52 (applying the rule to the list "aggravated sexual abuse, sexual abuse, or abusive sexual conduct involving a minor or ward" to hold that the limiting phrase "involving a minor or a ward" only modified "abusive sexual conduct").  Accordingly, "for violations of Federal law" modifies solely "to make arrests."

---

to access and examine evidence of any person under investigation does not. And in *Solomon*, we simply held, without providing any explanation, that security employees hired by a military base were not empowered by law to execute searches.  559 F.2d at 310.  The opinion says nothing about the types of jobs and functions that would satisfy the proviso.

Opposing application of the last antecedent rule, the government maintains that "for violations of Federal law" modifies each of the three alternative categories listed in the law enforcement proviso, invoking the competing "series qualifier" principle, *id.* at 355, that a modifying phrase "follow[ing] a 'straightforward, parallel construction that involves all nouns or verbs in a series'" modifies each term in the series. *United States v. Miles*, 75 F.4th 1213, 1222 (11th Cir. 2023) (quoting Antonin Scalia & Bryan A. Garner, Reading Law 147 (2012)).

But the Supreme Court has clarified that the rule of the last antecedent is a default rule that gives way to the series qualifier canon only when it is rebutted by adequate "structural or contextual evidence" suggesting it should not apply. *Lockhart*, 577 U.S. at 355–56; *see Jama v. Immigration and Customs Enf't*, 543 U.S. 335, 344, n.4 (2005) (holding that the rule of the last antecedent could be "*rebut[ted]*" where the modifying clause comes "at the end of a single integrated list—for example 'receives, possesses, or transports, in commerce or affecting commerce.'" (emphasis added)); *Porto Rico Railway, Light & Power Co. v. Mor*, 253 U.S. 345, (1920) ("[w]hen several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all" *if* "special reasons exist for so construing the clause in question.").

Here, the government does not proffer adequate "structural or contextual evidence" rebutting the default rule of the last antecedent.   In fact, the proviso's grammatical structure militates

against application of the series qualifier canon. "[F]or violations of Federal law" is "not set off by a comma," and a "qualifying phrase separated from antecedents by a comma is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 403–04 (2021) (quoting W. Eskridge, Interpreting Law: A Primer on How To Read Statutes and the Constitution 67–68 (2016)). Additionally, the list of three alternatives are "crafted each as a separate infinitive." *Frey v. Pekoske*, 2021 WL 1565380, at *6 (S.D.N.Y. Apr. 21, 2021); *see* 28 U.S.C. § 2680(h) ("*to* execute searches, *to* seize evidence, or *to* make arrests for violations of Federal law" (emphases added)). Had "Congress intended 'for violations of Federal law' to apply to all three [alternatives], it would not have crafted each as a separate infinitive and applied 'for violations of Federal law' only to the last one." *Frey*, 2021 WL 1565380, at *6.

Contrast the law enforcement proviso's structure with the structure of the statute in *Miles*, cited by the government, where we correctly applied the series qualifier canon. The statute there prohibited "manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." *Miles*, 75 F.4th at 1218. We held that the modifying phrase "a controlled substance" applied equally to all three listed verbs: (1) "manufacturing," (2) "distributing," and (3) "possessing." *Id.* at 1221–22. Unlike the law enforcement proviso, however, the modifying phrase considered in *Miles* is offset by a comma, and, more significantly, failure to apply the modifier to each of the three verbs would "read a gap into the statute" by leaving the listed verbs "without any object in

the text." *Id.* at 1222. Thus, in *Miles*, the statute's structure demanded application of the series qualifier canon.

Conversely, in the law enforcement proviso, each alternative category—(1) "to execute searches," (2) "to seize evidence" and (3) "to make arrests"—possesses both a verb and an object and stands independent of the modifying phrase "for violations of Federal law." 28 U.S.C. § 2680(h). And the last antecedent inference makes good sense here. An officer can only arrest someone if they violated the law, but he may conduct a search or seize evidence for all sorts of other reasons.

In sum, neither the structure nor the context of the law enforcement proviso adequately supports application of the series qualifier canon. We therefore conclude that the government fails to "rebut the last antecedent inference." *Lockhart*, 577 U.S. at 355 (quoting *Jama*, 543 U.S. at 344, n.4).

But even assuming "for violations of Federal law" modifies "to execute searches," the government's argument still fails—TSO searches are also for violations of federal law. For example, TSOs are tasked to screen for a variety of "hazardous materials" that are "forbidden in transportation." 49 C.F.R. § 172.101(a). And while § 172.101(a) concerns only civil violations, the modifying phrase "for violations of Federal law" plainly encompasses more than just criminal violations. *See Pellegrino*, 937 F.3d at 177 ("for violations of

Federal law" "sweeps notably broader than other statutes that specify violations of *criminal* law.").[12]

### D. The Sovereign Immunity Canon Does Not Apply

Generally, "a waiver of sovereign immunity must be unequivocally expressed in statutory text." *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012) (citation and quotations omitted). This interpretive canon requires us to construe "any ambiguities in the statutory language" in "favor of immunity." *Id.* So the government stakes much of its appeal on the contention that its interpretation of the statute is "at a minimum—plausible," as "ambiguity exists" so long as there is an alternative "plausible interpretation of the statute." *Id.*

We do not see ambiguity in the law enforcement proviso. We agree with our sister circuits that a plain reading of the text impels the conclusion that it applies to TSOs. *See Pellegrino*, 937 F.3d at 180 (the "statute is clear on its face."); *Iverson*, 973 F.3d at 854 (the statute "is not ambiguous."); *Osmon*, 66 F.4th at 150 ("the plain language of this statute supplies a clear answer."); *Leuthauser*, 71 F.4th at 1199 n.4 ("the statutory text is unambiguous"); *Mengert*, 120

---

[12] The government contends that "for violations of Federal law" must mean criminal violations because the phrase also modifies "to make arrests," and only criminal violations justify an arrest. Even granting this contention, our analysis remains unchanged—TSOs also execute searches in connection with criminal violations. TSOs inspect individuals "for the presence of weapons, explosives, or incendiaries," and 49 U.S.C. §§ 46505(b)(1) & (3) make it a crime to bring such items onto an airplane.

F.4th at 710 (agreeing with *Pellegrino* that the statute is "clear on its face").[13]

TSOs are "officer[s] of the United States" by virtue of their title and authority. These officers are "empowered by law to execute searches" because Congress vests them with the authority to perform searches—often highly invasive—of both individuals and their property. And, even assuming the government's argument regarding modification of "execute searches", those searches are "for violations of Federal law" because they are executed to prevent the transportation of contraband or dangerous items prohibited from airlines. Further, several torts subject to the law enforcement proviso—assault, battery, false imprisonment—are precisely the type of torts that could be committed by officers tasked exclusively with conducting physical and highly invasive searches of individuals. It would be odd for the government to retain immunity from intentional torts arising from such searches when performed by TSOs but accept liability for those same searches when performed by traditional law enforcement.

Resisting the text's plain language, the government manufactures ambiguity where there is none, importing absent terms ("criminal," "warrant"), invoking inapplicable statutory canons

---

[13] Because the proviso is unambiguous, we also decline to look at the government's legislative history evidence. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 969 (11th Cir. 2016) (en banc) ("[W]e do not consider legislative history when the text is clear. … When the words of a statute are unambiguous, … judicial inquiry is complete." (internal quotation marks omitted)).

(*noscitur a sociis*, series-qualifier), and comparing inapposite statues (ATSA, Wiretap Act).  But the government provides no legitimate reason to alter the plain text of the law enforcement proviso by cabining its reach to only those officers who wield "traditional law enforcement police powers."

The government's reliance on the sovereign immunity canon faces another hurdle:  the Supreme Court has clarified that the sovereign immunity canon does not apply to interpretations of the FTCA.  In *Dolan*, which dealt with one of § 2680's exceptions, the Court held that disputes over the breadth of the FTCA "do[] not implicate the general rule that a 'waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign.'"  546 U.S. at 491 (quoting *Lane*, 518 U.S. at 192).  This is because strict construction of sovereign immunity in favor of the government is '"unhelpful' in the FTCA context, where 'unduly generous interpretations of the exceptions run the risk of defeating the central purport of the statute,' which 'waives the Government's immunity from suit in sweeping language.'"  *Id.* (first quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984); then quoting *Yellow Cab Co.*, 340 U.S. at 547); *see Richards v. United States*, 369 U.S. 1, 6 (1962) ("The FTCA … was designed primarily to remove the sovereign immunity of the United States from suits in tort.").  Thus, the Court concluded that "the proper objective of a court attempting to construe one of the subsections of [§ 2680] is to identify those circumstances which are within the words and reason of the exception—no less and no more."  *Id.* (quoting *Kosak*, 465 U.S. at 853 n.9) (internal quotations omitted).

The government attempts to distinguish *Dolan* by limiting its holding only to those "provisions where Congress *reclaimed* sovereign immunity," i.e., the 13 exceptions presented in § 2680. And it argues that because the law enforcement proviso technically constitutes a *re-waiver* of sovereign immunity within § 2680(h)'s reclamation of immunity, *Dolan* does not apply. We are not convinced. The thrust of the Supreme Court's pronouncement in *Dolan* is that the FTCA's central purpose is a broad waiver of sovereign immunity and courts should therefore avoid applying a methodological preference for narrow interpretations of immunity-waiver in the FTCA context. Although *Dolan* dealt with one of the FTCA exceptions, it expressed an overarching principle against strict construction "in the FTCA context," 546 U.S. at 492, that applies equally to any provision of the FTCA. In other words, application of the sovereign immunity canon makes little sense where the sole subject of the statute is the government's sovereign immunity. Thus, as the Court in *Dolan* stated, the FTCA reserves a "neutral methodological approach" in its interpretation. 546 U.S. at 492 (quoting *Kosak*, 465 U.S. at 853 n.9).

Nor did *Dolan* recognize the government's formalistic distinction between "exceptions" to waiver (i.e., the 13 exceptions in § 2680) and "exceptions to the exceptions" (i.e., the law enforcement proviso) in outlining how to interpret the provisions of § 2680. As noted above, it simply proclaimed that, when "constru[ing] one of the subsections of 28 U.S.C. § 2680," courts should apply a neutral methodological approach. *Dolan*, 546 U.S. at 492 (quoting *Kosak*, 465 U.S. at 853 n.9) (emphasis added). Because the

law enforcement proviso is indisputably part of subsection 2680(h), it too falls within the scope of the Court's holding in *Dolan*.

Adopting a less restrictive interpretive approach aligns with the Supreme Court's FTCA jurisprudence, as illustrated by its most recent consideration of the law enforcement proviso in *Millbrook v. United States*, 569 U.S. 50 (2013). There, the Court held that the law enforcement proviso's re-waiver of sovereign immunity for intentional torts was not limited to torts committed while officers were engaged in investigative or law enforcement activity, but instead extended to any tort committed by an officer within the scope of his or her employment. *Id*. at 51–52. In so holding, the Court rejected the approach of multiple district courts and the Ninth Circuit, which sought to limit the proviso's breadth by restricting its re-waiver of immunity only to tortious conduct committed "during the course of executing a search, seizing evidence, or making an arrest." *Id*. at 55–56.

The Court explained that this restrictive approach does not comport with the statute's text, which "focuses on the *status* of persons whose conduct may be actionable, not the types of activities that may give rise to a tort claim against the United States." *Id*. at 56 (emphasis in original). It reasoned that "[h]ad Congress intended to further narrow the scope of the proviso, Congress could have limited it to claims arising from 'acts or omissions of investigative or law enforcement officers *acting in a law enforcement or investigative capacity*.'" *Id*. at 57 (emphasis in original). It therefore "decline[d] to read such limitation into unambiguous text." *Id*.

*Millbrook* is notable for two reasons. First, the Court never invoked the sovereign immunity canon. Although that may reflect its view that the language was unambiguous, the fact that *Millbrook* found the text clear—despite most lower courts and the Ninth Circuit contending otherwise—is itself noteworthy. The Court was evidently unmoved by the argument, echoed here by the government, that judicial disagreement itself evinces ambiguity.

Second, as our sister circuits have pointed out, the government advocates *for* precisely what *Millbrook* militates *against*—the insertion of limitations absent from the law enforcement proviso. The proviso contains neither the qualifying modifier "criminal," nor the term "execute search *warrants*," yet the government seeks to insert both. Such an approach runs counter to *Millbrook's* clear directive.

For this reason, the Third, Fourth, Fifth, Seventh, Eighth, Ninth, and Tenth Circuits have interpreted *Millbrook* to condone more expansive applications of the proviso. *See Pellegrino*, 937 F.3d at 172 ("Furthermore, as recently as 2013 the Supreme Court [in *Millbrook*] clamped down on a cramped reading of the proviso."); *Osmon*, 66 F.4th at 148 ("The problem with the government's argument is that it reprises a tactic the Supreme Court [in *Millbrook*] has already rejected: 'read[ing] into the text additional limitations designed to narrow the scope of the law enforcement proviso'"); *Campos v. United States*, 888 F.3d 724, 737 (5th Cir. 2018) ("We apply *Millbrook's* refusal to allow limitations to be placed on the law enforcement proviso to the law of this Circuit."); *Bunch*, 880 F.3d at

945 ("We are also influenced by the broad reading of the law-enforcement proviso that the Court adopted in *Millbrook*."); *Iverson*, 973 F.3d at 853–54 ("[T]wo of our sister circuits have adopted similarly broad interpretations of the law enforcement proviso .... Our analysis here is consistent with the Supreme Court's instructions [in *Millbrook*] and our sister circuits' interpretations." (citations omitted)); *Leuthauser*, 71 F.4th at 1198 ("Because we cannot 'read into the text additional limitations,' *Millbrook*, 569 U.S. at 55, we reject the government's contention that the proviso applies only to searches executed for criminal investigations."); *Mengert*, 120 F.4th at 707 ("The problem with the government's argument is that it reprises a tactic the Supreme Court has already rejected: "read[ing] into the text additional limitations designed to narrow the scope of the law enforcement proviso." (quoting *Millbrook*, 569 U.S. at 55)).

While we read *Dolan* and *Millbrook* as establishing that we should not strictly construe the law enforcement proviso in favor of the government, the government points out that our precedents mandate otherwise. *See, e.g.*, *Dotson v. United States*, 30 F.4th 1259, 1264 (11th Cir. 2022) (because "statutory waivers of sovereign immunity are to be construed strictly in favor of the sovereign.... The FTCA's waiver "must be scrupulously observed, and not expanded, by the courts." (quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994)); *Zelaya v. United States*, 781 F.3d 1315, 1322 (11th Cir. 2015) (the FTCA exceptions "must be strictly construed" (quoting *JBP Acquisitions, LP v. United States ex rel. FDIC*, 224 F.3d 1260, 1263–64 (11th Cir. 2000)). We are, of course, bound by our prior

32                    Opinion of the Court                    24-10545

panel precedent rule,[14] which contains no exception for "a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time," *United States v. Hicks*, 100 F.4th 1295, 1300 (11th Cir. 2024) (citation and quotations omitted).  Our holding here remains unchanged by these cases; as discussed earlier, the sovereign immunity canon does not apply because the law enforcement proviso unambiguously covers TSOs.  We lay out this analysis of *Dolan* to highlight that our precedents on the construction of the FTCA may be appropriate for en-banc reevaluation in an applicable case.

## IV.    CONCLUSION

The law enforcement proviso waives sovereign immunity for certain intentional torts—including those alleged by Koletas—committed by United States officers who execute searches for violations of federal law.  TSOs fall within that statutory definition.  Accordingly, we reverse the district court's order of dismissal and remand for consideration of Koletas's claims on the merits.

**REVERSED AND REMANDED.**

---

[14] Under the prior-panel-precedent rule, we are required "to follow the precedent of the first panel to address the relevant issue, unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) (quotation marks and citation omitted).