**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 23-13940

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

TOMARIO RICARDO HICKS,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:22-cr-00028-LAG-TQL-1

_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

Tomario Hicks pled guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).  The district court imposed an enhanced sentence of 180 months' imprisonment under the Armed

Career Criminal Act ("ACCA").  *See* 18 U.S.C. § 924(e).  Hicks appeals his sentence on three grounds.  After careful review, we affirm.

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

A.  *The Offense Conduct*

On January 28, 2022, Georgia State Patrol pulled Hicks over after Hicks committed a traffic violation.  While stopping Hicks, the patrol officer saw him throw items out the car's front passenger window.  Hicks admitted that he had thrown ecstasy pills out of the car and that he had a gun in the car.

Consistent with Hicks's admission, law enforcement found eight small bags on the side of the road beside Hicks's car.  Each contained 10 colored pills.  Later testing confirmed that, altogether, the pills contained more than 32 grams of methamphetamine.  Law enforcement also found a handgun on the driver's side floorboard, along with a digital scale in the center console and a box of plastic baggies in the backseat.  Hicks knew he was a felon on the day of the traffic stop.

B.  *Presentencing Proceedings*

A grand jury indicted Hicks on multiple charges, including possession of a firearm by a felon.  He pled guilty to that charge under a written plea agreement, and the government dismissed the remaining charges.

In his plea agreement, and again at his plea colloquy, and in support of the armed-career-criminal sentence enhancement under ACCA, Hicks made several significant admissions. He admitted that he (1) possessed with intent to distribute marijuana in December 2000 and was convicted of doing so under Georgia law; (2) possessed with intent to distribute marijuana in 2007 and was convicted of doing so under Georgia law; (3) possessed with intent to distribute marijuana in 2009 and was convicted of doing so under Georgia law; and (4) possessed with intent to distribute marijuana in 2012 and was convicted of doing so under Georgia law.

In anticipation of Hicks's sentencing, the Probation Office prepared a presentence investigation report ("PSR"). The PSR first assigned Hicks a base offense level of 24 under U.S.S.G. § 2K2.1(a)(2) because he had at least two previous convictions for "controlled substance offenses" when he violated § 922(g)(1). Then the PSR added 4 levels under U.S.S.G. § 2K2.1(b)(6)(B) because Hicks possessed the gun in connection with a "controlled substance offense" (possession with intent to distribute methamphetamine on the day of the traffic stop). *See* U.S.S.G. § 2K2.1(b)(6)(B) (Nov. 2021). Hicks's adjusted offense level became 28.

The PSR also concluded that Hicks was an armed career criminal under ACCA, because he had at least three prior convictions for "serious drug offenses," and because he possessed the gun in connection with a "controlled substance offense." As a result,

the PSR increased Hicks's offense level to 34 under U.S.S.G. § 4B1.4(b)(3)(A).

Next, the PSR subtracted 2 levels under U.S.S.G. § 3E1.1(a) because Hicks accepted responsibility for his conduct and subtracted 1 level under U.S.S.G. § 3E1.1(b) because he timely pled guilty.  As adjusted, Hicks's total offense level was 31.

The PSR assigned Hicks a criminal-history category of VI under U.S.S.G. § 4B1.4(c) because he committed the § 922(g)(1) offense in connection with a controlled substance offense.  Based on a total offense level of 31 and a criminal-history category of VI, Hicks's advisory guidelines sentencing range was 188 to 235 months.

## C.  Sentencing Hearing and Outcome

Hicks objected in writing to the PSR's calculation of an ACCA offense level of 34 under U.S.S.G. § 4B1.4(b)(3)(A).  Asserting that he was not subject to ACCA, Hicks initially argued that Georgia's marijuana definition included hemp in 2000, 2007, 2009, and 2012 (the dates of his Georgia marijuana convictions) while the federal marijuana definition excluded hemp in 2023 (when he was sentenced for the § 922(g)(1) offense)—making Georgia's marijuana definition categorically broader than the 2023 federal definition.  So, Hicks reasoned, his marijuana convictions were not "serious drug offenses" under ACCA, and U.S.S.G. § 4B1.4 was inapplicable.

Later, in supplemental briefing that the district court ordered, Hicks acknowledged that *United States v. Jackson*, 55 F.4th

846 (11th Cir. 2022), which adopted a date-of-previous-conviction rule for comparing the scope of state law to the scope of federal law, defeated his hemp-overbreadth argument. That was so as both the Georgia and federal marijuana definitions included hemp until 2018, well after Hicks's state convictions.

Given *Jackson*, Hicks shifted his angle of attack, asserting two new overbreadth arguments: first, that "Georgia excludes only 'defoliated' mature stalks, where the Federal definition excludes all mature stalks," and, second, that "Georgia . . . defines marijuana as any plant in the Cannabis genus, yet federal law limits the definition to a single species within that genus, Cannabis sativa L." In response, the government argued, first, that the textual variance between the description of "mature stalks" in Georgia and federal law did not disqualify Hicks's marijuana convictions as ACCA predicates and, second, that binding circuit precedent foreclosed Hicks's argument that the federal marijuana definition encompasses only one species of marijuana.

At sentencing, the district court overruled Hicks's ACCA objections and accepted the PSR without any changes. The court concluded that Hicks had failed to establish that Georgia's marijuana definition was categorically broader than the federal definition as of the time of Hicks's Georgia convictions. Given its rejection of Hicks's overbreadth challenges to his marijuana convictions, the district court opted not to entertain his isomer- and ioflupane-overbreadth challenges to his one 2007 Georgia conviction for pos-

sessing with intent to distribute cocaine.  The court varied downward from the advisory sentencing range and sentenced Hicks to 180 months in prison (ACCA's minimum penalty), followed by 5 years of supervised release.

## II.    Standards of Review

We review de novo "a district court's determination that a state conviction is a 'serious drug offense' under ACCA."  *United States v. Miles*, 75 F.4th 1213, 1219 (11th Cir. 2023).  We ordinarily "review de novo whether a prior conviction qualifies as a 'controlled substance offense' under the Guidelines."  *United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019).  But when, as here, the defendant forfeits a challenge to the calculation of the advisory sentencing range in the district court and raises it for the first time on appeal, we review for plain error only.  *See United States v. Bennett*, 472 F.3d 825, 831 (11th Cir. 2006); Fed. R. Crim. P. 52(b).

Normally, we also "review de novo constitutional sentencing issues."  *United States v. Smith*, 775 F.3d 1262, 1265 (11th Cir. 2014) (alteration adopted and citation omitted).  But when a defendant raises a constitutional challenge for the first time on appeal, we review only for plain error.  *United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010).

## III.    Discussion

Hicks raises three challenges to his conviction and sentence. First, he asserts that the district court incorrectly found him to be an armed career criminal under ACCA.  Second, he argues that he did not have at least two prior "controlled substance offenses" for

purposes of determining his guidelines offense level, so the district court erred in concluding that level was 24. And third, he challenges the constitutionality of § 922(g)(1).

We begin with Hicks's first issue—whether he qualifies as an armed career criminal under ACCA. We conclude he does. And because the armed-career-criminal offense level is 34, that moots Hicks's second challenge regarding the initial offense level of 24. So after we explain why Hicks qualifies for the armed-career-criminal enhancement, we proceed to his constitutional arguments.

### A. Challenge to Classification as an Armed Career Criminal

Under ACCA, a mandatory minimum sentence of 15 years' imprisonment applies when a defendant convicted of being a felon in possession of a firearm under § 922(g) "has three previous convictions . . . for a violent felony or a serious drug offense." 18 U.S.C. § 924(e)(1).

Generally, we identify prior convictions that qualify as predicate offenses for a sentencing enhancement by using the categorical approach. *United States v. Laines*, 69 F.4th 1221, 1233 (11th Cir. 2023). Under that approach, we consider only "the elements of the statute under which the defendant was convicted and not . . . the facts underlying the prior conviction." *Id.* (citation omitted). We "presume that the prior conviction rested upon nothing more than the least of the acts criminalized or the least culpable conduct." *Id.* (citation omitted). In other words, "the least culpable conduct prohibited under the state law must qualify as a predicate offense, and

all the controlled substances covered by the state law must also be controlled substances under federal law." *Id.*

Hicks argues that none of his prior convictions qualify as "serious drug offenses" because Georgia's definitions of "cocaine" and "marijuana" are materially broader than the federal definitions at the times of his prior convictions. In his reply brief, he concedes that his arguments about overbreadth as it relates to certain cocaine isomers and hemp are no longer viable in light of *Brown v. United States.* 602 U.S. 101 (2024).

Still, Hicks continues to pursue the overbreadth argument as it relates to the differing exclusions of "mature stalks" from marijuana under Georgia law and federal law. To address that argument, we recount how Georgia and federal law differ. Both Georgia and federal law define marijuana to include "all parts of the plant." Ga. Code Ann. § 16-13-21(16); 21 U.S.C. § 802(16)(A). But Georgia excepts from this definition "the completely defoliated mature stalks of such plant," Ga. Code Ann. § 16-13-21(16), while the federal government excludes "the mature stalks of such plant." 21 U.S.C. § 802(16)(B)(ii).

Hicks bears the burden of establishing that Georgia's "marijuana" definition is impermissibly overbroad under the categorical approach. *See United States v. Dixon*, 874 F.3d 678, 682 (11th Cir. 2017). And he cannot satisfy that burden here.

Hicks's argument about mature stalks necessarily fails because the divergent language does not establish a "realistic proba-

bility" that Georgia would actually prosecute conduct falling outside the federal definition. *Id.* Under his view, mature stalks that are not completely defoliated—that is, stalks with some or all of their leaves still attached—fall within Georgia's definition but outside the federal definition. That's simply incorrect as a matter of fact.

A defendant would face prosecution under both statutes even if he were apprehended with a mature foliated stalk of marijuana that contained only a few marijuana leaves. Both definitions except the stalk of the marijuana plant from penalization, and neither excepts the leaves of the marijuana plant. Hicks points to no case holding that foliated marijuana stalks are excepted from the federal definition—even if mature. That's unsurprising. An exception like that would swallow the rule. *Cf. United States v. Fiore*, 983 F.2d 1, 4 n.4 (1st Cir. 1992). So Hicks has not shown that Georgia's definition of "marijuana" is categorically broader than the federal definition. For that reason, his prior marijuana convictions qualify as "serious drug offenses" under ACCA.

B. *Second Amendment Challenges to § 922(g)(1)*

Hicks also argues that § 922(g)(1) is facially unconstitutional and as applied to him. But in *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010), and later in *United States v. Dubois*, 139 F.4th 887 (11th Cir. 2025) ("*Dubois II*"), we have rejected this constitutional challenge.

Starting in *Rozier*, we held that "statutory restrictions of firearm possession, such as § 922(g)(1), are a constitutional avenue to

restrict the Second Amendment right of certain classes of people[,]" such as felons. 598 F.3d at 771. We relied in part on the following statement in *District of Columbia v. Heller*, 554 U.S. 570, 626 (2008): "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ." As we explained, this statement "suggests that statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment." *Rozier*, 598 F.3d at 771. In *Rozier*, we also rejected the defendant's argument that this statement from *Heller* was merely dicta and should not be afforded authoritative weight. *Id.* at 771 n.6.

Hicks contends that the Supreme Court's decisions in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022), and *United States v. Rahimi*, 602 U.S. 680 (2024), abrogated *Rozier*. But *Dubois II* already rejected this argument. There, we explained—interpreting *Rahimi*—that the Supreme Court emphasized it was "not suggest[ing] that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." *Dubois II*, 139 F.4th at 892 (quoting *Rahimi*, 602 U.S. at 698). We further noted that *Rahimi* reiterated that "prohibitions on the possession of firearms by felons and the mentally ill . . . are presumptively lawful." *Id.* (quoting *Rahimi*, 602 U.S. at 698). These statements "confirm[ed] that *Rozier* remains good law." *Id.* Thus, *Rozier* continued to bind us in *Dubois II* and foreclosed Dubois's constitutional challenge to § 922(g)(1) as a violation of the Second Amendment. *Id.* at 894. As we explained, "clearer instruction from the Supreme

Court" is necessary "before we may reconsider the constitutionality of section 922(g)(1)." *Id.*

Although Hicks acknowledges the binding nature of *Dubois II*, he contends that it was wrongly decided. But "[u]nder the prior panel precedent rule, a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by us sitting en banc." *Laguna Rivera v. U.S. Att'y Gen.*, 130 F.4th 915, 919 (11th Cir. 2025). In sum, Hicks's facial and as-applied Second Amendment challenges to § 922(g)(1) fail.

### IV.    Conclusion

For the reasons we've explained, we affirm Hicks's conviction and sentence.

**AFFIRMED.**